UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | Case No.: 17 – 50808 – RJK |
| Douglas Eugene Smith,<br>                       Debtor. | Chapter 7 Case |
| Mark Kassebaum, individually, and<br>PDMM, Inc., derivatively,<br>                       Plaintiff, | Adv. Proc. No. 18-05004-RJK |
| vs. | |
| Douglas Eugene Smith,<br>                       Defendant. | |

## **TRIAL MEMORANDUM**

### **INTRODUCTION**

The plaintiffs, Mark Kassebaum, individually, and PDMM, Inc., derivatively, submit this trial memorandum identifying the evidence that they will introduce at trial and the relevant law supporting the plaintiffs' claims.

### **FACTS**

Plaintiff PDMM is a Minnesota corporation. It was founded in July 1994. It is a franchisee of Green Mill Restaurants, LLC, and operates a Green Mill restaurant located at 340 South Lake Avenue, Duluth, MN 55802.

The debtor, Douglas E. Smith, is a Minnesota resident. He resides at 5201 Oneida Street, Duluth, Minnesota 55804. The debtor is one of the four shareholders of PDMM. He is the general manager of PDMM's restaurant. He was also president of PDMM until September 14, 2016.

Plaintiff Mark Kassebaum is a Minnesota resident. He is one of the four shareholders of Plaintiff PDMM, Inc. The shareholders of PDMM and their percentage of ownership are:

- Kassebaum – 34%
- The debtor – 19%
- The debtor's father, Russell Smith II – 38%
- The debtor's brother, Russell Smith III – 9%

The parties have referred to Russell Smith II as "Smith Sr." and Russell Smith III as "Smith Jr." Karen Smith is the corporate secretary of PDMM. She is the spouse of Smith Sr.

Between July 8, 2008, and March 31, 2016, the debtor unlawfully caused PDMM to pay him, or on his behalf, at least $111,631.77 for miscellaneous personal expenses and uses.

Prior to March 19, 2010, the debtor had a personal loan from National Bank of Commerce. Betweeen March 19, 2010, and December 2, 2013, in his status as the general manager of PDMM, the debtor unlawfully caused PDMM to pay at least $22,347.28 on the debtor's personal loan.

The debtor organized Rivdogg, LLC, doing business as Avenue C, on January 15, 2015, to operate a restaurant of the same name in Cloquet, Minnesota. Avenue C opened in January of 2017 and closed in November of 2017. The debtor originally owned 100% of Avenue C. He currently owns 70 percent of Avenue C. The other owners are Dave Rislov (20%) and Zack Wehr (10%).

Between January 15, 2015, and November 17, 2016, in his status as the general manager of PDMM, the debtor unlawfully caused PDMM to pay expenses of, or transfer PDMM assets to, Avenue C totaling at least $43,912.88. Those payments and transfers of assets to Avenue C inured to the benefit of the debtor.

Between April 10, 2008, and January 12, 2016, in his status as the general manager of PDMM, the debtor unlawfully caused PDMM to pay him bonuses totaling at least $30,640.68.

The foregoing assets that the debtor misappropriated to his own personal uses were in addition to the salary and benefits that the debtor received from PDMM.

Moreover, the debtor's misappropriation of PDMM's assets to his own personal uses was not authorized or approved in any way by PDMM or PDMM's board of directors or other officers. Indeed, debtor's misappropriation of PDMM's assets to his own personal uses was done without the knowledge or consent of any of PDMM's other officers or directors.

In the spring of 2016, Kassebaum noticed an anomaly with his K-1 as compared with the financial statements and results of PDMM. As a result, Kassebaum and Smith Sr.

agreed that an audit of PDMM's operations, including PDMM's accounting records, should be conducted. They agreed that PDMM would pay the cost of the audit.

Kassebaum and Smith Sr. retained a forensic accountant, Frances M. McCloskey, to conduct the audit. Ms. McCloskey conducted the audit and issued a report on May 27, 2016. In her report, Ms. McCloskey concluded that since at least 2008, the debtor had engaged in a pattern of conduct involving misappropriation of PDMM's assets and improper accounting practices.

In the calendar year 2015, the debtor's salary was $51,866,96. In the calendar year 2016, the debtor unlawfully caused his salary to increase to $76,695.39, an increase of $24,828.43. The foregoing increase in the debtor's salary was not authorized or approved in any way by PDMM or PDMM's board of directors or other officers. The increase in the debtor's salary was made without the knowledge or consent of any of PDMM's other officers or directors.

The plaintiffs commenced a lawsuit against the debtor, Smith Sr., and Smith Jr. on July 1, 2016, in St. Louis County, MN, district court, File No. 69-DU-CV-16-2229. The plaintiffs subsequently amended their complaint to add Avenue C as a defendant.

The debtor filed his Chapter 7 bankruptcy petition on November 28, 2017.

The plaintiffs commenced this adversary proceeding on March 5, 2018.

## ARGUMENT

Plaintiffs' claims against the debtor are excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4). To sustain its burden of proof that the debt is nondischargeable under section 523(a), a plaintiff must prove the required elements by a

preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**I. The debtor's debt to the plaintiffs is excepted from discharge by the debtor's embezzlement and larceny under 11 U.S.C. § 523(a)(4).**

11 U.S.C. § 523(a)(4) provides, in relevant part:

> (a) A discharge under [11 U.S.C. § ] 727 ... does not discharge an individual debtor from any debt—
>
> ...
>
> (4) for fraud of defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). The debtor's conduct which forms the basis of the Plaintiffs' claims constitute embezzlement and larceny within the meaning of 11 U.S.C. § 523(a)(4). As a result, Plaintiff's claims are excepted from discharge.

**A. The elements of a claim for embezzlement.**

Section 523(a)(4) excepts from discharge a debt for embezzlement. For the purposes of this exception, embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Thompson*, 458 B.R. 504, 509 (B.A.P. 8th Cir. 2011), *aff'd,* 686 F.3d 940 (8th Cir. 2012) (citing *Belfry v. Cardozo,* 862 F.2d 661, 662 (8th Cir.1988)). "To prevail, the creditor must establish 'the debtor improperly used the creditor's property before complying with some obligation to the creditor.'" *Id.* (citing *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993)). In other words, "[a] plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used." *In re Belfry*, 862 F.2d 661, 662 (8th Cir. 1988).

### B. The elements of a claim for larceny.

Section 523(a)(4) also excepts from discharge a debt for larceny. For the purposes of this exception, larceny is the "wrongful taking and carrying away of the property of another with the intent to convert such property to the taker's use without the consent of the owner." *In re Thompson*, 458 B.R. 504, 510 (B.A.P. 8th Cir. 2011), *aff'd,* 686 F.3d 940 (8th Cir. 2012) (citation omitted). "The exception does not apply if the debtor's original possession of the property is lawful." *Id.* (citation omitted).

### C. The debtor's conduct constitutes embezzlement and larceny.

In this case, the debtor misappropriated PDMM's assets to his own personal uses. He was not lawfully entitled to use PDMM's assets for the purposes for which they were, in fact, used. Moreover, the debtor wrongfully took PDMM's assets with the intent to convert those assets to his own use without the knowledge or consent of any of PDMM's other officers or directors. As such, the debtor's misappropriation of PDMM's assets was not authorized or approved by PDMM.

In short, it cannot be legitimately disputed that the admitted conduct of the debtor constitutes larceny within the meaning of the statute. Indeed, the debtor largely admitted that he took the assets without the knowledge, consent, or approval of PDMM or the other directors and shareholders. The admitted facts establish that the debtor took PDMM corporate assets with the intent to misappropriate those funds for his own personal use without the consent of the plaintiffs. The facts will demonstrate clearly that the plaintiffs have satisfied the requisite elements.

**II. The debtor's debt to the plaintiffs is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because the debtor obtained the debt by false pretenses, a false representation, or actual fraud.**

11 U.S.C. § 523(a)(2)(A) provides, in relevant part:

> (a) A discharge under [11 U.S.C. § ] 727 ... does not discharge an individual debtor from any debt—
>
> ...
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud ...

Under this provision, the Eighth Circuit requires the complaining creditor to prove, in connection with the debt, (i) that the debtor made a false representation of fact, (ii) that the debtor knew was false at the time the debtor made it, (iii) that the debtor made the representation with the intent and purpose of deceiving the creditor, and that (iv) the creditor justifiably relied on the representation, (v) sustaining financial injury as a proximate result of the making of the representation. *In re Scott*, 403 B.R. 25, 36 (Bankr. D. Minn. 2009).

The statute of limitations for fraud claims typically begins to run when the aggrieved party discovers the facts constituting the fraud. *See, e.g.*, *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 235 (8th Cir. 1996), *aff'd*, 521 U.S. 179, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997).

A false representation or false pretense under 11 U.S.C. § 523(a)(2)(A) must normally relate to a present or past fact. *Shea v. Shea (In re Shea)*, 221 B.R. 491, 496 (Bankr.D.Minn.1998). A debtor's promise related to a future act can constitute actionable fraud, however, where the debtor possesses no intent to perform the act at the time the

debtor's promise is made. *Universal Pontiac-Buick-GMC Truck, Inc. (In re Routson)*, 160 B.R. 595, 609 (Bankr.D.Minn.1993).

Furthermore, "[s]ilence regarding a material fact can also constitute a false representation as an omission under 11 U.S.C. § 523(a)(2)(A)." *In re Sulier*, 541 B.R. 867, 878 (D. Minn. 2015) (*citing In re Van Horne,* 823 F.2d 1285 (8th Cir. 1987) (*rev'd on other grounds*)). As the bankruptcy court stated in *In re Casali*, 517 B.R. 835 (N.D. Ill. 2014):

> A false representation can be shown through conduct and does not require a spoken or written statement. . . . Where the circumstances imply a specific set of facts, a debtor's failure to disclose necessary information to correct a false impression may also constitute a false representation. . . . A false representation need not be an overt oral or written lie; it may be established by showing conduct intended deliberately to create and foster a false impression.

*Id*. at 842 (citations omitted).

Where a fiduciary relationship exists, silence may constitute fraud. *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985). Moreover, if the parties were in a fiduciary relationship, delay in discovering the fraud may be excusable. *Toombs,* 361 N.W.2d at 809. "[T]he rule generally is that silence alone is not enough, but in addition there must exist a violation of some duty to disclose, arising for example, from a fiduciary relationship . . ."*Rochester Hills Chrysler Plymouth v. Phillips* (*Matter of Phillips*), 153 Bankr. 758, 761 (E. D. Mich. (1993).

Courts have found a duty to disclose to exist: (a) when a confidential or fiduciary duty relationship exists (b) when disclosure is necessary to clarify misleading information already disclosed; or (c) when one party has "special knowledge" of material facts to which

the other party does not have access.  *Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1064 (D. Minn. 2001).

In order to determine whether a duty to disclose exists, the bankruptcy court must look to the common law concept of fraud, found in the Restatement. *Apte v. Japra, M.D., F.A.C.C., Inc.*, *In re Apte*, 96 F.3d 1319, 1323 (9th Cir. 1996) (*citing Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

"A duty to disclose facts may exist under certain circumstances, such as when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading."  *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn.1989). "One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party."  *Klein v. First Edina Nat'l Bank,* 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972).

"One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. . ."

Restatement (Second) of Torts (1977) § 551(2) *Liability for Nondisclosure*.

In this case, as discussed in the facts section, the debtor fraudulently failed to disclose his misappropriation of PDMM's assets despite having an obligation to do so as the general manager and an officer, director, and shareholder of PDMM. Further, he obviously knew that his fraudulent nondisclosure was false and with intent to deceive at

the time he failed to disclose necessary facts. As a result, he made a false representation of fact within the meaning of the statute.

Moreover, the debtor concealed his conduct and, as a result, PDMM and its other officers and directors were unable to discover the misappropriation of assets. As a result, the plaintiffs justifiably relied on the misrepresentation, sustaining financial injury as a proximate result of the misrepresentation.

In addition, Kassebaum has incurred significant attorneys' fees personally in bringing the state court litigation and the adversary proceeding, from which the corporation will benefit if Kassebaum is successful. Such damages may be recoverable by Kassebaum. *See Shlensky v. Dorsey*, 574 F.2d 131, 149 (3d Cir. 1978) ("The plaintiffs in a shareholders' derivative action may, thus, recover their expenses, including attorneys' fees, from the corporation on whose behalf their action is taken if the corporation derives a benefit, which may be monetary or nonmonetary, from their successful prosecution or settlement of the case.") (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-395, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Levine v. Bradlee,* 378 F.2d 620, 622 (3d Cir. 1967)). If Kassebaum prevails at trial, he will seek to recover the attorneys' fees he incurred for the benefit of the company.

Dated: July 16, 2018			**FABYANSKE, WESTRA, HART &THOMSON, P.A.**

By: /s/ Richard G. Jensen
    Richard G. Jensen (#18990X)
    Colin M. Bruns (#396399)
    333 S. Seventh Street, Suite 2600
    Minneapolis, MN 55402
    Phone: (612) 359-7600
    rjensen@fwhtlaw.com
    cbruns@fwhtlaw.com

**ATTORNEYS FOR PLAINTIFFS**