UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
_____

In re:                                                             Case No.: 17-50808- RJK

Douglas Eugene Smith,                                                           Chapter 7

       Debtor.
_____

Mark Kassebaum, individually, and PDMM,
Inc., derivatively,

       Plaintiff,                                   Adv. Proc. No. 18-05004- RJK

v.
                                                 **MEMORANDUM AND ORDER**
Douglas Eugene Smith,                        **DETERMINING DISCHARGEABILITY**
                                                               **OF A DEBT**
       Defendant.
_____

At Duluth, Minnesota, November 1, 2018.

      This adversary proceeding came on for trial on July 23, 2018 on the plaintiff's complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4). Richard G. Jensen appeared for the plaintiff. John H. Bray appeared for the defendant. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S. §§157(b)(1) and 1334, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(I).

**FACTS**

1. Plaintiff Mark Kassebaum is a Minnesota resident. He is one of the four shareholders of PDMM, Inc. He has been a shareholder and member of the board since 1994.

2. PDMM is a Minnesota corporation, founded in July 1994. It is a franchisee of Green Mill Restaurants, LLC, and operates a Green Mill restaurant located at 340 South Lake Avenue, Duluth, MN 55802.

3. Douglas E. Smith lives in Duluth and is a Minnesota resident. He is the debtor in this case.

4. The debtor is one of the four shareholders of PDMM and the general manager of PDMM's restaurant. He was also president of PDMM until September 14, 2016.

5. The shareholders of PDMM and their percentage of ownership are:

    a. Kassebaum – 34%

    b. Smith – 19%

    c. Smith's father, Russell Smith II – 38%

    d. Smith's brother, Russell Smith III – 9%

6. The parties refer to Russell Smith II as "Smith Sr." and Russell Smith III as "Smith Jr."

7. Smith Sr.'s wife, Karen Smith is the corporate secretary of PDMM.

8. The debtor organized Rivdogg, LLC, doing business as Avenue C, on January 15, 2015, to operate a restaurant of the same name in Cloquet, Minnesota. Avenue C opened in January of 2017 and closed in November of 2017.

9. The debtor originally owned 100% of Avenue C. He currently owns 70 percent of Avenue C. The other owners are Dave Rislov (20%) and Zack Wehr (10%).

10. When the debtor formed Avenue C, it did not have its own bank account and its money was deposited into PDMM's account. Because of this, Avenue C's employees were paid out of PDMM's account.

11. The debtor occasionally borrowed money from PDMM by writing checks and using the company credit card. Though he intended to pay all of the money he borrowed, the debtor did not pay all of it back. He repaid $107,351.62 to PDMM. PDMM's credit card was available for the use for PDMM restaurant's management team.

12. PDMM purchased a truck for $110,000 that the debtor and other employees used for work including delivery and other work-related business. The other company car was too big to be used for deliveries.

13. The debtor often obtained advances on his payrolls and dividends.

14. As a manager of the Green Mill restaurant, the debtor's day-to-day duties included giving bonuses to employees and management. He used a method of calculating bonuses based on a policy at a restaurant he previously worked for. He used 10% of profits to distribute to employees and management based on their ranking in a ratio of 4:3:2:1.

15. On September 14, 2016, at a special meeting of the board of directors of PDMM, the debtor made a motion to retroactively approve a 2014 loan from PDMM to the debtor for $23,000 with interest at 5%. Three shareholders voted for the motion while Kassebaum voted against it and the motion was approved. The debtor testified that he presented the loan for the board's approval "to help clean up" some of the transactions.

16. Because of his mental condition that affected his memory, Smith Sr. was not able to recall much of what happened during the relevant times.

17. Kassebaum testified that he expected the debtor to inform him and the other shareholders of all of the personal loans and charges made on PDMM's account. He stated that he did not believe the debtor was hiding those charges but that he placed the record of the transactions in places the shareholders could not find.

18. In the spring of 2016, Kassebaum and Smith Sr. agreed that an audit of PDMM's operations, including accounting records, should be conducted and agreed that PDMM would pay the cost of the audit.

19. Kassebaum and Smith Sr. retained a forensic accountant, Frances M. McCloskey, to conduct the audit.

20. McCloskey conducted the audit and issued a preliminary report on May 27, 2016.

21. McCloskey gathered documents and interviewed individuals to prepare her analysis. She did not speak with the debtor because he was not present at the restaurant when she was conducting the interviews.

22. McCloskey testified that in her professional opinion, the documents gathered are not easy to discern and transactions and payments were difficult to track. She opined that most of the checks

3

written to the debtor and the credit card charges were outside of the ordinary course of business. She has also found evidence that the debtor had paid back to PDMM some of the payments made to him.

23. The plaintiff commenced a lawsuit against the debtor, Smith Sr. and Smith Jr. on July 1, 2016, in St. Louis County, MN, district court, File No. 69-DU-CV-16-2229. The plaintiff subsequently amended his complaint to add Avenue C as a defendant.

24. The debtor filed his Chapter 7 bankruptcy petition on November 28, 2017.

25. The plaintiff commenced this adversary proceeding on March 5, 2018 seeking to except from discharge the claims asserted against the debtor.

## ANALYSIS

The plaintiff asserts that his claims should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4). He argues that the debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because the debtor made false representations of material facts to the plaintiff and falsified the books and records of PDMM to conceal his conduct, on which the plaintiff reasonably relied and failed to take appropriate action to investigate and stop his actions. The plaintiff also argues that the debt is excepted from discharge under 11 U.S.C. § 523(a)(4) because the debtor obtained and benefited from money and other assets of PDMM through embezzlement and larceny.

*Nondischargeability under 11 U.S.C. § 523(a)(2)(A)*

Section 523(a)(2)(A) of the Bankruptcy Code provides that:

(a) a discharge under section 727...of this title does not discharge an individual debtor from any debt-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -

4

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Exceptions to discharge under section 523 are narrowly construed against the creditor and liberally in favor of the debtor to facilitate the debtor's fresh start. *E.g., Reshetar Systems, Inc., v. Thompson (In re Thompson)*, 686 F.3d 940, 944 (8th Cir. 2012). For a debt to be excepted from discharge under section 523(a)(2)(A), the creditor must prove the elements of fraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 288 (1991).

The plaintiff does not allege that the debt should be excepted from discharge under this section based on false pretense or actual fraud. He argues that the debt is excepted from discharge because of false representations.

To establish fraud under section 523(a)(2)(A), the plaintiff must show:

(1) The debtor made a representation; (2) at the time the representation was made the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intent and purpose to deceive the creditor; (4) the creditor justifiably relied upon such representation; and (5) the creditor sustained injury as a proximate result of the representation.

*The Merchants Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999).

1. False Representation

To qualify as a false representation under section 523(a)(2)(A), the statement must relate to a present or past fact. *Shea v. Shea* (*In re Shea*), 221 B.R. 491, 496 (Bankr. D. Minn. 1998). A debtor's promise relating to a future action, which does not purport to depict current or past fact, cannot be defined as a false representation. *Id.* A debtor's promise related to a future act can constitute actionable fraud where the debtor possesses no intent to perform the act at the time the debtor's promise is made. *Id.* at

5

497. A silence regarding material fact can also constitute a false representation as an omission. *In re Moen*, 823 F.2d at 791.

The plaintiff claims that the debtor committed fraud by representing to PDMM that he did not receive bonuses. The plaintiff also alleges that the debtor committed fraud by intentionally failing to disclose (1) the payments paid to him by PDMM, (2) the personal loan he caused PDMM to incur to purchase a vehicle, (3) causing PDMM to pay expenses of Avenue C, and (5) the payroll and dividend advances that he was not entitled to.

The plaintiff argues that the bonuses were employee benefits and required the approval of the board of directors in accordance to the bylaws. The plaintiff does not cite to a specific provision of the bylaws.

The debtor admitted that he paid himself and other managers bonuses. However, he disputes that bonus required the board's approval. He stated that he exercised his managerial duties in implementing a bonus system similar to one at a previous restaurant he managed and payed bonuses to himself and other employees. The debtor cited to section 4 of Article V, titled "Officers" of the bylaws to argued that bonuses are not employee benefits. The provision provides in pertinent part that "the salaries of all officers and agents shall be as fixed by the Board of Directors." However, the bylaws say nothing about restaurant employees' compensation.

First of all, nothing in the record indicates that the debtor was aware of this provision. Second, this provision of the bylaws is not applicable to payment of bonuses to employees. The beginning of Article V, Section 1, states that officers include chairman of the board, a president, a secretary and a treasurer. This provision of the bylaws relates specifically to officers of the board of directors of PDMM and salaries of these officers. The debtor was paying a bonus to himself and other employees of the restaurant in his capacity as a manager of the restaurant and not as an officer of the PDMM's board of directors. Therefore, this section of bylaws is inapplicable to the bonus payments.

Additionally, any lack of authorization for payment of the bonuses would not constitute misrepresentation. The debtor did not conceal the payment of the bonuses. The bonus payments are documented in the financial records as early as 2008. The debtor told PDMM about the charges by informing the bookkeeper. Without any evidence of the debtor influencing the bookkeeper, what she did with the record is not his fault.

Next, the plaintiff argues fraud by omissions for not disclosing payments made to the debtor, personal loans to purchase a vehicle, expenses paid for Avenue C and payroll and dividend advances paid to him. The plaintiff does not allege that the debtor directly stated that he did not receive the payments to himself and to Avenue C or caused PDMM to pay for a vehicle. The plaintiff only argues that the debtor's failure to inform him of these facts and also concealing of these payments in complex financial statements making it difficult to find, constituted misrepresentation by silence.

However, the evidence does not show that the debtor failed to inform or concealed evidence of these transactions. In fact, all of the payments were in written records, including written checks and credit card statements. McCloskey testified that she could trace and actually traced most of the payments from the company documents and business records. She testified that it was difficult to understand the payment because of the poor practices of the bookkeeper and the labeling methods used but she was able to find most of the transactions. Any difficulty tracing the transactions was due to the bookkeeper's decision, not to the debtor's attempt to hide the transactions.

As to the derivative claim, the debtor did not make misrepresentations to PDMM because he told the company about all the payments through the bookkeeper. He disclosed payments to the bookkeeper. The plaintiff did not present sufficient evidence to prove that the debtor made misrepresentation by his silence or took part in concealing records of the payments.

    2.   <u>The debtor's knowledge</u>

In order to assess the debtor's knowledge of the falsity of the representation, the court must consider the knowledge and experience of the debtor. *In re Moen*, 238 B.R. at 791. A representation that is made "under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth" satisfies the knowledge requirement. *Id*.

Fraudulent misrepresentation requires that the representation is accompanied by an element of scienter. *Hernandez v. Sulier* (*In re Sulier*), 541 B.R. 867, 879 (Bankr. D. Minn. 2015). The maker of the representation must (a) knows or believes that the matter is not as he represents it to be; (b) lacks confidence in the accuracy of his representation; or (c) knows that he does not have the basis for the representation. *Id*. There is rarely evidence that shows a person knew that his statement is false, thus the court must look to circumstances in the case. *Id*.

The debtor is member of the board of directors, shareholder and employee of PDMM since its creation in 1994. At least according to the plaintiff's evidence, the debtor has been borrowing money from the company since 2008. The evidence does not show that the debtor knew that he was not entitled to bonuses as an employee of the restaurant without the approval of the board. He believed he paid the bonuses as part of his managerial duty and not as his role as the officer of the board.

The debtor did not know he was making false representation about the money he borrowed because he admitted he borrowed the money and he intended to pay it back. In fact, he had paid some of that money back. The debtor did not omit disclosure of information with fraudulent intent. He gave information of the payments to the bookkeeper and she made record of it. The debtor testified that he bought the car to be used by him and the other employees for delivery because the other company car was too big to be used for delivery. The evidence and testimony do not show by the preponderance of the evidence that the debtor knew he was making false representation nor did he knew his failure to disclose

8

the payments to the plaintiff was misrepresentation. The plaintiff did not meet his burden of proof on this element.

3. <u>The debtor made the representation deliberately and intentionally with the intent and purpose to deceive the creditor</u>

The plaintiff argues that the debtor intended for the plaintiff to rely on his misrepresentation to prevent the disclosure of the payments with the specific purpose of inducing the plaintiff to not act to investigate and prevent the debtor from his conduct. As stated earlier, there is no evidence that the debtor knew he was making a false representation. There is also no evidence that the debtor intended the plaintiff to rely on the misrepresentation to prevent him from investigating or taking actions against the debtor.

The plaintiff asserts that the debtor falsified the books and records of the company to conceal his conducts. There is no evidence to show that the debtor falsified the books and records of the company. The bookkeeper documented almost all of the transactions with notations and labeling made solely by her. While McCloskey had difficulties discerning the labeling of the transaction used by the bookkeeper, there is no evidence that the debtor mislabeled or influenced the bookkeeper to mislabel the transaction to make it difficult for plaintiff to investigate or take actions. The plaintiff has failed to prove this element.

4. <u>The creditor justifiably relied upon such representation</u>

The plaintiff must prove this element by showing that he justifiably, but not reasonably, relied on the debtor's representation. *Field v. Mans*, 516 U.S. 59, 74 (1995). Justifiable reliance is a subjective determination made in light of the qualities and characteristics of the particular creditor and circumstances of the particular case. *Id*.

A court analyzing this element can examine any number of factors to determine whether a creditor's reliance was justifiable. *In re Sulier*, 541 B.R. at 882. These factors include:

> (1) the parties' previous business dealings; (2) events which might have put the creditor on notice that the representations were not well-founded; (3) whether a simple inquiry or request for additional information might have revealed the misinformation; (4) the course

9

of dealings between the creditor and the debtor; and (5) information commonly known about the particular industry.

*Id.*

The parties are shareholders, members of the board of directors and family members. Their business relationship dates to at least 1994, since the formation of PDMM. Kassebaum, a medical doctor, testified that he was put on notice of the financial issues when he received notices of a tax liability as a shareholder of PDMM. He stated that the debtor did not tell him that he was not making those payments. The plaintiff's evidence also shows bonus payments and checks written to the debtor as early as 2008.

A "victim of fraud is not justified in relying on a representation, and a duty to investigate arises, where the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived." *Hernandez v. General Mills Federal Credit Union* (*In re Hernandez*), 860 F.3d 591, 604 (8th Cir. 2017). A simple inspection of the company's books and bank account statements would have shown charges made to the company accounts for the benefit of the debtor. Kassebaum never met the bookkeeper nor did he inspect the book or rely on any entries in the book. The plaintiff failed to show justifiable reliance.

5. <u>The creditor sustained injury as a proximate result of the representation</u>

The proximate cause element requires the plaintiff to show that the action of the debtor was the act, without which the plaintiff would not have suffered the loss complained of. *Rezac v. Maier* (*In re Maier*), 38 B.R. 231, 233 (Bnkr. D. Minn. 1984). The plaintiff here alleges that the debtor's misrepresentation caused him and PDMM injury, the loss of money misappropriated by the debtor. Because the plaintiff failed to prove that the debtor made representation, his injury does not result.

As to him individually, the evidence does not show that any representation was made to the corporation and no specific representation was made to him. The plaintiff alleges that by relying on the debtor's misrepresentation he purchased stocks. The plaintiff has been a shareholder since 1994 and the

supposed allegation happed after the 1994 purchase. He did not show any damage separate from the corporation that he suffered. He did not prove his individual claim.

*Nondischargibility under 11 U.S.C. § 523(a)(4)*

The plaintiff also alleges that the debt should be excepted from discharge under section 523(a)(4) because the debtor's conduct constitute embezzlement and larceny.

Section 523(a)(4) of the Bankruptcy Code provides that:

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt-
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

1. Embezzlement

Embezzlement, for the purpose of 11 U.S.C. § 523(a)(4), is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Gadtke v. Bren* (*In re Bren*), 284 B.R. 681, 698 (Bankr. D. Minn. 2002). The plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which it was in fact used. *Bank of America N.A. v. Armstrong* (*In re Armstrong*), 498 B.R. 229, 234 (B.A.P. 8th Cir. 2013).

To prove embezzlement, the plaintiff must prove that he entrusted his "property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id*. Courts often examine whether the terms by which a debtor came into possession of the funds create a particular obligation on the debtor. *Id*. "Obligations sufficient to support a claim of embezzlement are ones which make the debtor's discretionary use of the payments, prior to complying with obligations, improper. *Id*.

11

Here, the plaintiff has not presented evidence to show that he entrusted property to the debtor nor that he instructed the debtor to use the money for a certain purpose. There are no terms by which the debtor came into possession of the plaintiff's property that created an obligation upon him. The plaintiff does not present any obligations of the debtor to support a claim of embezzlement.

Additionally, the debtor's role as a manager of the restaurant or an officer of the board of directors alone does not establish sufficient and specific obligations of the debtor to support a claim of embezzlement.

2. Larceny

The plaintiff also asserts a claim of larceny under section 523(a)(4). Larceny is the "wrongful taking and carrying away of the property of another with the intent to convert such property to the taker's use without the consent of the owner." *Reshetar Systems, Inc. v. Thompson* (*In re Thompson*), 458 B.R. 504, 510 (B.A.P. 8th Cir. 2011), *aff'd*, 686 F.3d 940 (8th Cir. 2012).

The plaintiff has not proven larceny. The debtor testified that he borrowed the money with the intent to pay back and he had in fact paid some of the money. The plaintiff has not shown the debtor had the intent to convert the plaintiff's property.

**CONCLUSION**

For the reasons stated above, I conclude that the plaintiff failed to meet his burden to establish claims under 11 U.S.C. § 523(a)(2)(A) and (a)(4).

**ORDER**

THEREFORE, IT IS ORDERED:

1. The defendant's debt to PDMM, Inc. is not excepted from the defendant's discharge.

2. The debt, if any, of the defendant to the plaintiff is not excepted from the defendant's discharge.

LET JUDGMENT BE ENTERED ACCORDINGLY.

/e/ Robert J. Kressel
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *11/01/2018*
Lori Vosejpka, Clerk, by AMM